Last case today for the 4th district is Jones v. Brainerd. That is case number 4120116. For the appellant we have Allison Lorton for the appellee Andrew Carruthers. May it please the court, counsel, my name is Allison Lorton from the law firm of Whitman & Lorton in Jerseyville. I represent Ronald Brainerd II and his wife Wendy Brainerd, the defendants and appellants. The plaintiffs in this action, Ray and Jennifer Jones, filed a suit against the defendants, Ronald and Wendy Brainerd, for a trespass and sought an injunction to prohibit the defendants from using a driveway located on their property. The defendants filed a counterclaim in the circuit court asking the court to award them a prescriptive easement over the drive in the plaintiff's property. The trial court found in favor of the plaintiffs and denied the defendants' request for prescriptive rights. The facts in this case are derived primarily from the plaintiff's affidavits, the plaintiff's witness affidavits, and an evidentiary deposition submitted to the court. They are largely not in dispute. The central issue on this appeal is whether or not the oral agreement surrounding the construction of this driveway between the plaintiff's predecessor, Daniel Zenner, and the defendant's predecessor in interest, his father, Brainerd Sr., necessitates the grant of a prescriptive easement. The driveway addition was constructed in the early 1970s by Daniel Zenner and Mr. Brainerd together. The Zenner family and the Brainerd family acquired these two adjacent five-acre tracts at approximately the same time when these properties were divided by the Weidmans. Mr. Brainerd cleared his property, constructed a pond, and subsequently built a dam along his southern boundary of his property adjacent with the Zenner land. Mr. Brainerd and Mr. Zenner agreed that they would construct the dam. Did they build it together, or was that just Zenner? It's my understanding from the affidavits that Mr. Brainerd constructed the dam, the driveway was built by the two of them together, according to Mr. Zenner's affidavit as well. The driveway is on the dam? The driveway is on the dam initially as a gravel drive. Right. Okay, I'm sorry to interrupt you. The purpose of the drive is obviously to connect their two at-the-time mobile home trailers on their respective properties to the public road. It's approximately a 200-foot long drive connecting to Indian Lake Road in Jersey County. In connection with the defendant's motion for summary judgment, Mr. Zenner submitted an affidavit. I wish to restate to the court the pertinent provisions of this affidavit. Mr. Zenner testified that it was my intention that Mr. Brainerd and whomever owned his parcel after him would have an easement to cross the driveway for ingress and egress to the Brainerds' home and to their property. If that were his intention, why didn't he put it in writing and have it recorded? Well, the very next line of his affidavit, he says, we never put this in writing because we considered a handshake to be good enough. Obviously, no knowledge of the statute of frauds. That was the agreement between Mr. Zenner and Mr. Brainerd at the time. I don't think his intent can be any clearer. I thought the case law said that there was a presumption that parties were familiar with the statute of frauds and agreements regarding real estate. I would agree with that unless there is clear evidence to the contrary. And I think by Mr. Zenner's own affidavit, he stated, I believe the handshake was good enough to convey a legal right in my property to somebody else permanently. That he had no knowledge of the statute of frauds. That certainly sounds like his permission. How could it be adverse possession? I think with the intent of the permanency of this grant. He didn't say, I gave him permission. And if you look at his affidavit specifically, I didn't just give him permission to always use this drive. I intended that the Brainerds or whomever owned this land after him would always be able to use this driveway. That's further evidenced by the utilities that were run along the driveway. The water meter of the defendants was actually located on the plaintiff's side of the drive. Your complaint is though for prescriptive easement? Correct. Doesn't that have to be adverse? I believe, and I agree with you, the elements of adverse possession must be shown in order to establish a prescriptive easement. Well, the guy says, hey, go ahead. As long as I'm here, you're entitled to use it. What's adverse about that? Well, that's why we cited two cases in particular. Peterson v. Kuruvia, an Illinois Supreme Court case. And Schmidt v. Brown, a Supreme Court case. And I'll recite the same principle that actually the trial court recited in its opinion. Whether there was adverse use of a way under a claim of right for a period of 20 years, or the use of the way is only permissive is almost wholly a question of fact. Unless that evidence is clearly to the contrary, a court will presume that a parole agreement to impress a property with a servitude was made with the provisions of the statute of frauds and intended as a license only, not as an easement in the interest or land itself. Our argument, our basis of this appeal is that we have clear evidence to the contrary. We have an affidavit of the landowner who expressly states, I intended to give a legal interest in my property. I intended to give an easement. So this has not been a prescriptive easement situation. You're claiming that we own it. No, I would disagree with that, Judge. If you look, and I can go into it further under Peterson v. Korubia, that initial oral grant can be the basis of an adverse or hostile possession. We're not claiming we have title to that driveway, but based on this parole agreement and the unequivocal acts for the next 40 years thereafter, the ownership, the maintenance, the possession, the use, uninterrupted and continuous, that agreement can serve as a basis of a hostile and adverse act sufficient to allow a grant of prescriptive rights. Peterson v. Korubia held that a parole agreement, I believe the facts in that case were somewhat different from ours, but it was three or four lot owners set a 12-foot area behind their commercial buildings as an access. Ingress and egress, it was a commercial property, so there was deliveries, utilities, and gas at the time. And the defendant had a similar argument. The defendant said, well, the 12-foot setback for ingress and egress was an oral agreement that could never ripen into prescription. And the court in Peterson v. Korubia, the Supreme Court held, well, no, unless there's clear evidence to the contrary that the agreement was intended to impress upon property a servitude. I don't understand what that means. What are you saying that the Supreme Court held in that case? The Supreme Court held in Peterson v. Korubia, it stated whether an agreement is to operate as a license or a basis for the claim of right. And that's what we argue here. This parole agreement is the basis for the claim of right. Correct. Which one of the elements under for adverse possession for a prescriptive easement. The Supreme Court in Peterson said this parole agreement, we're not saying that the parole agreement conveyed any rights. It's invalid under the statute of frauds, but it can serve as a basis, as a claim of right, which is exactly what happened here. The agreement between Mr. Brainerd and Mr. Zenner in the early 1970s, Mr. Zenner expressly saying, Did Zenner ever say that his successors in interest would be bound by the agreement he made with Brainerd? It's not mentioned in his affidavit, Your Honor. Didn't Zenner just say that as long as I'm here, you or your successors in interest can use the driveway? Isn't basically that what he said in his affidavit? Well, I would characterize it differently. I don't think he conditioned it as long as I'm here. I think his intent was more permanent. I intend to give you and anyone who owns a property after you, you being the Brainerds, the right to cross. I know. He intended to, but he never expressed that he intended his successors in interest to be bound by the statement he was making. I don't have any testimony in that regard. Isn't that kind of critical? You're going to suggest that he wanted to, he was actually giving an easement rather than a license. Well, if you're doing that, don't you have to bind your own successors? Obviously, we would not be before this court today had he thought that a simple handshake wasn't going to be enough to do what he intended to do, and I think that's honestly as far as he went with it. This is what I want. This is what we've agreed to do. I think that's the problem, though, is what he wanted, what he intended, what he would continue to be bound by, but there is simply nothing here that I can see that allows him or authorizes him or even indicates he intended to bind his own successors in interest. That's not a problem for your theory? No, not necessarily because of the span of time, Your Honor. This is a shared drive. The only two people, the only two families that are using this drive are the Zenners and their predecessor, subsequent owners, and in fact, in our case, it was my client's family. They have always, the predecessor in title was his father. They've used the drive. They've occupied the drive. They've maintained the drive. They've mowed around the drive as if they've had this legal right. Referenced in our brief, at one point in 1973, my clients obtained a survey that was never recorded, so obviously not proof of the easement, but it shows their claim. It shows what their belief and their claim of right. We don't own this property, yes, but we own an easement. We have a legal right in an easement to use this property. The properties are as they were in 1972 today. When did the Joneses buy the property? Approximately three months before the suit was filed in November of 2010, I believe. Walt, was it obvious to anyone who would go to the Jones property to take a look at whether you'd be interested in purchasing it, was it obvious that the driveway was being used by two households, by two different lots? I would answer that question absolutely. This drive is about a 200-foot drive. It ends at a T-like intersection. At the end of this intersection are two garages. One that was going to be sold with the house they were purchasing, and the other that clearly they weren't buying. The point I'm trying to get at is part of your argument that the Joneses were on notice when they bought this property that this drive was used by two different lot owners. Maybe that doesn't make any difference. I think it's a matter of common sense. I think it has to come into play. If you're wanting to buy your house out in the country, you're going to notice that the drive you pull on, there's two garages right in front of you, and you're not buying both of them. There's a mobile home trailer to the left. There's an outbuilding. These are five-acre parcels that are directly right next to each other. There's a pond that clearly is not part of your property. I think there's an element of common sense that can be inferred in this case. Well, I guess to flip the argument the other way, however, when you get your title work and you see that the driveway is your property and there is no easement noted, what's a good-faith purchaser to think, like the Joneses, other than they may be using it, but they don't necessarily get to use it, because otherwise it would be marked as an easement on the title. Well, I think that's where, in our brief that we cited, these cases in Peterson and Schmidt come into play. I mean, the legality of it has come into play after so many years. This wasn't five years ago this happened. This has been 40 years this family has owned and occupied this parcel of property. The plaintiff's tract had gone through three or four different owners of title. It had been rented at various times. It had been vacant for various times. Well, what precipitated this? The record wasn't all that clear. This problem. Honestly, within a matter of three months after they purchased the property, I think they realized what they bought is not exactly what they wanted. They didn't realize that somebody right next door is going to be using the driveway just as much as they're going to be using the driveway to use their land. Does your client have another access? Not currently built. There's no other access point to his house. What's going on right now? They're still sharing the driveway. I thought the court issued an injunction. It was state pending the appeal. So now both parties have been using the drive. So they're both using it now, and there is no other driveway for your client. But actually my question is, is there an area, a place where they could build a driveway? Yes. Because they're landlocked without this driveway. My clients in front of their property have a pond. There is an aerial photo attached in the record, and you can briefly see. There possibly would be an access point around the pond. Whether or not it has to go over to another road, we're not even quite sure yet. Obviously they have never had to deal with this issue in 40 years of living there. They haven't pursued it any farther since this appeal. But no, to say that they're completely landlocked would be inaccurate. I think it's possible it would be, you know, obviously a great. I don't know for sure if they can do it or not. But if they have to, they will. But obviously that's why we're here. We want to maintain and use what they've used, their entire family has used for 40 years. Should I continue? Yes. Thank you. If you have more, absolutely, you have time left. The facts in the record, given the basis of our, as I said, our argument is this parole agreement is the claim of right element for adverse possession and to grant a prescriptive easement. The facts in the record evidence the remaining elements are present. The plaintiffs in their briefing before the trial court note and put a lot of credence on the neighborly relationship between the parties, between the Zenners and the Brainerds initially when their driveway was constructed. That somehow prevents the element of adversity or hostility. We again cite the same cases as before, Peterson v. Caribbean, Schmidt v. Brown, and specifically distinguish their authority of Castle. The basis of the neighborly presumption, generally in cases as in Castle, where the origin of the way hadn't been established, cases typically where farmers or hunters or fishermen have always used a certain route across a piece of property in the country. No one is really sure when it started or how it became. This case is very different from that. We have a driveway purposely constructed on the land of another for the purposes of two families with the landowner submitting an affidavit testimony that he intended to give legal rights in his land to another. In this case, the facts contained in the record support an award of prescriptive rights. We have knowledge, we have acquiescence, but without permission. We have a claim of right, we have continuity, exclusivity, and under a claim of right for well over 40 years. Our appeal is simple. We believe that the rule that we've restated in Peterson, which was originally set forth by the Bolin v. Walters case, the Supreme Court case, is the same rule of law applied by this trial court. We believe that he simply misapplied this rule. The facts contained in this record of this, specifically the affidavit of Daniel Zenner, constitute clear evidence to the contrary that this parole agreement did in fact intend to convey a legal right. Had he known a handshake wasn't good enough, it didn't work under the statute of frauds. There's clear evidence to the contrary to support a claim of right. The remaining elements necessary for a prescriptive easement are present in the record, and we would ask that this court reverse the trial court's order and enter an order granting prescriptive rights consistent with those facts contained in the record. Okay, thank you. You'll have your vote. Thank you. Please proceed. May it please the Court, Counsel. My name is Andrew Carruthers. I'm with the law firms Stobbs, Sinclair, and Carruthers in Alton, Illinois. I'm here today representing the plaintiffs slash counter defendants Ray and Jennifer Jones. Counsel went into some of the background in this matter. My clients came to own their property, which is the southern parcel of two five-acre parcels on Indian Lake Road in Jerseyville. The driveway in question is entirely on my client's property. There was some question before about when they came to know of that. They did obtain a title report when they bought their property. They were advised that the driveway was on their property entirely, but that the neighbors did use it, and obviously as such, no easement of record. It is at their discretion as to whether they want to continue with that use. Now, when they moved to the property, I believe it was September, October 2010, they gave it some time, a few months. Well, you say obviously with their discretion. Well, without any easement of record or agreement to the contrary. It's clear that someone else is using it. It's clear that somebody else is using it, and they were aware of that, but they were also advised by the title company, well, it's your property, I guess they use it, but however, it's... But there could be something called a prescriptive easement. Sure, and that's a few months later when we got into the litigation in this matter, that's exactly what happened. They asserted a claim for a prescriptive easement, and we've been litigating it since about three months after they moved on to the property. Now, it was through disagreement. I think there was a question relating to how this came about. Why, all of a sudden, after 38 years, did my client show up and they don't... Well, it was their contention, and I'm not sure if this is completely in the record or not, but it's their contention that they no longer wanted the defendants to use this driveway. Disagreements between the parties, potential abusing of what they claim is permissive use. So that's what led to litigation. Now, you also asked a question, I believe, about access, and there is a map in the appendix to the defendant's, the appellant's brief, which has a map, and clearly there is a pond along the frontage of the property, but there is a good section of territory to the northern end where a driveway could be constructed, likely will be constructed, if the appeal is affirmed, the judgment of the trial court is affirmed. Now, so they're not landlocked in any way. As for the existing driveway, they're claiming prescriptive easement rights, with the central element of the prescriptive easement or adverse possession being that of adversity, hostility. And that is the single element that we contend they have not, cannot comply with. A survey was mentioned from 1973, which indicated the existence of an easement. As they've acknowledged, no such easement of record exists, and through a previous order by Judge Gramlich, that survey from 1973 was deemed inadmissible, as hearsay. The plaintiffs, I guess the defendants, argue extensively, as you heard, in the Peterson v. Karubia case. Yes. Why isn't that case applicable? Well, the Peterson v. Karubia case, and both that case and the Schmidt case from 1907, both Supreme Court cases, but we contend both of those cases have to do with the establishment of the claim of right element in a prescriptive easement request, not the hostility requirement. And this whole business with the potential oral agreement, that would go, in these cases, they would go to support their contention that they were operating under the claim of right. However, when establishing either adverse possession or prescriptive easement, you have to do more than that. Counsel, this is an obscure area of the law. Peterson and Schmidt are set forth extensively in the points of authorities and discussed in the felon's brief. In your brief, in reply, do you discuss those cases? In the brief? Yes. I have to refer back to the brief. Please do so. Okay. No, I don't believe that I do. Well, what accounts for that? Are we supposed to have to do our own research to find out whether the cases cited by the appellant are of any application? No, not at all. I believe what I did in the – actually, I take that back, Your Honor. On page 10 of my brief, I did briefly mention the defendant's citation of Schmidt and Peterson. However, I identify both as an apposite as to the issue of permissive use versus adverse use, which I contend is the only matter that was before the trial court and the central issue on appeal. So I did not set them out because I believe them both to be an apposite. They're not set forth in your points of authorities either. Exactly. I identified them as such as the central issue being permissive use versus adverse use. I think both of these are an apposite as they – Well, just as a matter of form, counsel, anything you cite should be in your points of authorities. And if it's the primary case or authority relied upon by your opponents, they ought not be dealt with in an offhand fashion. They ought to be analyzed and discussed extensively. And if you believe there's analysis of those cases and use of them is wrong, you should tell us in detail. Okay. I apologize for that, Your Honor. Well, counsel, help me along because the Peterson case is pretty compelling. Now, why is that? I'm not sure I'm following what you're arguing. Why is it distinguishable? Well, Your Honor, in the Peterson case and going through it, I believe the central issue in that case was whether or not the party claiming a prescriptive use of rights laid out this potential agreement, whether it satisfied the claim of right element. My position is that, yes, I think that the claim of right issue is an element of prescriptive easement, but it's immaterial if they cannot satisfy the hostility requirement as mentioned in the Castle case. It is our position that that is just yet but another issue in establishing a prescriptive easement or adverse possession – another element, I'm sorry. So you said that language, which seems to help, actually, the defendants case, goes only to the element of claim of right, to the claim of right element. Yes. And that's why the language doesn't make any difference for us. For us. Am I following your argument? If that is my contention, Your Honor, I believe that the claim of right is but one element in establishing a prescriptive easement. And the element that the trial court focused on, and that is the central issue on appeal, is whether the presumption of permissive use, which arises, pursuant to the Castle case, arises when you can establish evidence of a neighborly relationship. Now, I think the evidence clearly shows, and the affidavits referred to by counsel clearly show, that there was a neighborly relationship from the inception of this driveway, from the creation of the driveway. There was a neighborly relationship. Both parties may have contributed to constructing it. Both parties likely, and their successors in interest, contributed to maintaining it over the years. I think that helps our position more than hurts, in that it helps establish that neighborly relationship, which, pursuant to the Castle case, gives rise to the rebuttable presumption of permissive use, which can only be overcome through the introduction of evidence to the contrary. That there was some hostile event, maybe the posting of a trespassing sign or the like, that would convert the use from permissive to adverse. No such subsequent hostile event ever occurred. So we maintain that this driveway began as just one neighbor letting another neighbor use his driveway. It began as permissive and remained as such until my clients moved onto the property 38 years later, give or take, and began to raise concerns about the defendant's use of the driveway. So we contend that it's been permissive from day one, and that no evidence was submitted in the trial court to convert that use to something other than permissive. What did the trial court say in its judgment of, what was it, December 29th? Yes. The line one of the judgment by Judge Bramlich was, the court, after considering the testimony of the witnesses sworn and the arguments of counsel, finds that the defendants have failed to overcome the presumption of permissive use. And, again, this presumption is what he speaks of. Is that the order of the court, then? That was the order of the court. Then where is the order? Does it say any more than that? Well, it goes on. It's about a page and a half, Your Honor. I know it, but I don't see where it speaks in order. Well, he finds about halfway through the first page, the defendant's request for a prescriptive easement should be and is denied. But his reasoning before that, he cites the Castle case, which is the case that gives rise to the rebuttable presumption if you can establish a neighborly relationship. So when Judge Bramlich orders, or finds, that the defendants have failed to overcome the presumption of permissive use. So is the only issue that we have before us a question of whether the prescriptive easement should be continued or denied? Yes. I believe that the appellants are seeking that you reverse the order of the trial court and find that they have met the elements of a prescriptive easement. That's the basis for appeal. But, really, what there is for this court to consider is whether Judge Bramlich ruled in error when he found, agreeing with our position, that there is a presumption of permissive use and that they failed to overcome it with any testimony or evidence regarding any subsequent hostile act that would convert that use from permissive to adverse. As for this oral agreement that we've heard about today, I do not recall that issue being fully argued when we were at the trial court level, but it's raised here in the briefs and argued by counsel today. This potential existence of some oral parole agreement that may purportedly vest their clients and their predecessors in interest with some easement rights. And I just contend that nothing was ever reduced to writing. If that was their intention, it was not made abundantly clear that it was to run with the land. My clients, when they made the decision to purchase the property, they did see the title work. They saw that they completely owned the driveway and that, yes, the neighbors did use it, but if they don't have the legal right to use it, is it the discretion of the landowner who owns the driveway as to whether he wants to continue that practice, absent of showing a prescriptive easement, of course. So we contend that the oral agreement didn't, there was no agreement, no bargain for exchange, nothing like that exists. Well, does it matter that they helped maintain it for years and years and years? To satisfy some of the other elements of a prescriptive easement, yes, it would matter. That would be evidence, I think that that testimony, that evidence, does support the other elements of the claim. But the fact that both neighbors worked together and maintained the driveway from the beginning, again, that's evidence of a neighborly relationship that basically puts the ball in their court to show otherwise,  with the court taking a presumption that it's permissible. We contend that there was no subsequent hostile event that would convert that use to anything other than permissive. That was the finding of the trial court that the defense failed to overcome the presumption of permissive use. That was later the subject of a motion to reconsider before we arrived here. By that time, Judge Gramlich retired. He retired at the end of 2011. So basically, we re-litigated the entire issue on the motion to reconsider before Judge Meyer, who affirmed Judge Gramlich's order and found that there was no reason to disturb the order of Judge Gramlich. Well, our standard of review is they know about what happened, right? Yes. And Judge Meyer basically took the same approach. We reviewed everything that Judge Gramlich did and came to the same conclusion. There's just a few other things I'd like to point out. In the Mueller case, which is also cited in an appellant's brief, the court denied a prescriptive appeasement on the basis that the plaintiff's use of the driveway originated under mere oral permission rather than a claim of right, insomuch as the verbal permission to pass over the lands cannot ripen into a prescriptive right, regardless of the amount of time permissive uses enjoy. So with that case, I think it's similar facts to this one, insofar as no written permission was ever granted at any point during the use of this over 38 years. And the statements by Daniel Zinner in his affidavit, they always thought a handshake was good enough. I believe that is clear evidence that this was meant to be permissive, nothing more than neighborly courtesy, and that as no intervening hostile event occurred, we contend that the presumption was not overcome and that both the order of Judge Gramlich and the motion reconsidered by Judge Meyer be affirmed. Do I have any other questions? Seeing none, thank you very much. Rebuttal, please. Thank you very much. Thank you. Can you tell me what the status of the parties are now as to this property? Like on both uses? Right now, they're both sharing the driveway. I would like to answer the court's question earlier with regards to, and counsel's claim, he claims that we cannot show the element of adversity or hostility. But if you read, and I'll read from you a citation from Peterson, this claim of right is also, in effect, the basis of the claim for adversity. We're claiming that we have a right, and your property also helps satisfy that element. And I'll direct the court to a citation on page 532 of the Illinois Reporter from the Peterson case. If, on the other hand, What was that page number? 532. Okay, thank you. Of the Illinois Reporter in Peterson v. Corrubia. If, on the other hand, the language and conduct of the parties purport to give a right to the way, and the use is continued under such claim of right for 20 years, the use is adverse and will ripen into prescription. This agreement is the basis for our prescriptive right. So you're saying claim of right is essentially the same thing as adversity. How I interpret it... Those two elements are woven together, is what you're saying the Peterson case says. When you have this initial parole agreement, this agreement between two parties that is the origination of this right of way, the origination of this grant, albeit unenforceable on its own, but pursuant to the statute of frauds, but that it's this oral agreement between these two parties that is the basis of this claim of right. It's establishment based on the conduct. You know, like you said, is it immaterial what the Brainerds have done for the past 38 years? No, that they've acted in accordance with this presumed legal grant they thought they had received. They maintained the drive. They used the drive. Anything that anybody would do if they thought they owned that driveway, they did it. And that is element, like I said, kind of in and of itself, claim of right leads to the element of adversity, and they acted in accordance with that for well beyond the statutory period up until this litigation. Other than the Peterson case, do you have any authority to defeat their claim? Well, in my brief, Your Honor, I do distinguish two cases, Miller v. Keller, as well as two cases that use the same principle but apply it differently. They apply it that a shared drive is, in fact, just a license. And I distinguish those two cases. And my distinguishing fact, the evidence that is present here in this case, not in those other cases, is a true intent of the landowner to convey something in his property. This isn't a case where the landowner didn't really know what was going on. I mean, this is an agreement between two parties. And we have this affidavit on file that says, I'm intending to give my neighbor something, a legal right in my property. The cases where you have shared drive, the permanency isn't as evident there. For example, I believe it is in the Boland case itself, where it was two brothers who had a shared drive along the property line. They intended, their express agreement was, we can both use this drive so long as our houses stand. There isn't such limitation in Mr. Zenner's affidavit. A similar agreement along a shared drive case by the Supreme Court, I believe, Schmidt v. Brown, I apologize. I don't have it in front of me, so I won't recite it to the court. But the principle that was articulated in Peterson, that was set forth in Schmidt, that this claim of right can, in fact, serve as a basis for adverseness or hostility, so long as the remaining elements are there. It's been 50 years ago. Is there any authority citing Peterson for this proposition in the last 51 years? In 2011, there was a case out of the First District called the Catholic Bishop case. What did it say? It declined to extend Peterson. The issue before that appellate court dealt with the issue of exclusivity. The Catholic Bishop case stands for the proposition that in order to get a prescriptive easement in the state of Illinois, the use has to be completely exclusive of the true landowner, almost a dispossession, excuse my word choice, of the true landowner from using that. And the Chicago, that First District appellate court, failed to extend Peterson in that case. However, there was... What does that mean, they failed to extend? So you disagree with their analysis? I do, because I believe the facts are much different. As with the Chicago Bishop case, we dealt with a right-of-way. The origin of that right-of-way was unknown. There was no established agreement creating the right-of-way. Is the Catholic Bishop case inconsistent with the argument you presented? I don't believe so, because I believe it's factually distinguishable. The Catholic Bishop case has nothing to do with the parole agreement. The Catholic Bishop case focused solely on one element of prescriptive easement, and that was exclusivity. That wasn't addressed by the trial. You are out of time. Thanks to both of you. The case is submitted. The court stands in recess. Thank you.